GIANT PORTLAND CEMENT COMPANY, Appellant, *v.* STATE OF NEW YORK et al., Defendants, NATIONAL BANK OF COMMERCE OF ROCHESTER et al., Appellants, and BARBER ASPHALT PAVING COMPANY, Respondent.

**Lien — when materialman not deprived of his lien by diversion of material to other purpose by contractor — no lien for loss of profits on material taken back — when value of bags recovered properly credited against claim of materialman — when claims for labor performed not entitled to priority of payment — when lienor asserting affirmative claim in action brought by another should have filed lis pendens — right of priority for laborers' liens does not exist as against assignment by contractor of money due or to grow due on contract.**

1. A materialman who in good faith furnishes materials to a contractor with which to construct a building or build a road should not be deprived of his right to a lien because the contractor without his knowledge or consent diverts the material to some other purpose. One who thus supplies material comes within the fair meaning of section 5 of the Lien Law (Cons. Laws, ch. 33) which gives a lien to " a person * * * furnishing materials to a contractor * * * for the construction of a public improvement." He has " furnished "

his materials when he has delivered them to the contractor in good faith for the purpose of being used in the improvement. Section 12, which requires the notice of lien to give a description of the improvement " upon which the labor was performed and materials expended," should not be construed as overruling or destroying the other provision. The word " expended " will be construed as covering a case where the materialman has furnished materials to be expended and used and this purpose has been defeated after they have left his possession by the act of the contractor without his fault.

2. Where, however, after the materialman has filed its lien for the full amount of its claim, it made an arrangement with the contractor under which it took back some of the material delivered, sold the same and applied the proceeds, less expenses, generally on its claim against the contractor, it cannot enforce its lien for the difference between the amount credited and the price at which the material had been sold by him in the first instance. A vendor cannot take back his materials and at the same time claim that they have been furnished for construction of an improvement.

3. A contention that the value of certain bags recovered from the contractor and credited as a payment on the claim of the materialman should be applied in satisfaction of items for which no claim can be filed rather than those which can be enforced by a lien, cannot be sustained, where, amongst other obstacles, it appears that at the time the bags were credited on the account the balance unpaid on the purchase price of retaken material had not been fixed.

4. Claims that liens for labor performed should have priority of payment over the liens and claims of other parties under section 25 of the Lien Law providing that " laborers for daily or weekly wages shall have preference over all other lienors," cannot be upheld where no action was commenced by any of such lienors within three months from the time of filing their notices of lien as required by statute (Lien Law, § 18), and though their liens were continued to a date subsequent to the commencement of this action, no *lis pendens* was ever filed upon any of the claims. While the commencement of this action wherein said lienors were joined as defendants obviated the necessity of the commencement of an action on these liens, it did not relieve defendants appearing and setting up their respective claims and liens from filing a notice of pendency thereof. Under section 18 of the Lien Law, as the statute read at the time, defendants asserting an affirmative claim in an action brought by some one else were required to file such notice of pendency.

5. Such claims for priority could not, in any event, be upheld where their only practical effect would be to make a claim under an assignment subordinate to such liens. The right of priority for

laborers' liens does not exist as against an assignment by the contractor of moneys due or to grow due on his contract.

*Giant Portland Cement Co.* v. *Barber Asphalt Paving Co.*, 187 App. Div. 581, affirmed.

(Argued December 15, 1921; decided January 24, 1922.)

APPEALS from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 15, 1919, which modified and affirmed as modified a judgment of Special Term determining the rights, in a sum due on a contract for highway construction, of several mechanics' lienors and an assignee of moneys due and to become due on said contract.

*William F. Lynn* for plaintiff, appellant. The Appellate Division erred in holding that plaintiff could have no lien for materials delivered but not used. (Lien Law, § 5; *Gates & Co.* v. *Stevens Construction Co.*, 220 N. Y. 38; *Sears* v. *Wise*, 52 App. Div. 118; *Ocorr & Rugg Co.* v. *City of Little Falls*, 77 App. Div. 592; 178 N. Y. 622; *Burns* v. *Sewell*, 48 Minn. 431; *Frudden Lumber Co.* v. *Killan*, 117 Ia. 93; *Beckel* v. *Petticrew*, 6 Ohio St. 251.) The effect of the judgment of the Appellate Division is to make application of the payment of $3,441.14 (the returned bags) to the secured part of plaintiff's claim, to the exclusion of the unsecured part. This is erroneous. (Munger on Application of Payments, 134; *Field* v. *Holland*, 6 Cranch, 8; *Bankers Trust Co.* v. *Gillispie Co.*, 181 Fed. Rep. 448; *Stone* v. *Seymour*, 15 Wend. 19; *Thomas* v. *Kelsey*, 30 Barb. 268; *Wardlow* v. *Troy Oil Mill*, 74 S. C. 371; *Monsen* v. *Meyer*, 190 Ill. 107; *Barbee* v. *Morris*, 221 Ill. 382; *Pierce* v. *Sweet*, 33 Penn. St. 151.)

*Clarence E. Shuster* for National Bank of Commerce, defendant, appellant. The court erred in adjudging that the plaintiff, appellant, Giant Portland Cement Company, has a valid lien upon said moneys for any part of

its claim. (*Spruck* v. *McRoberts*, 139 N. Y. 193; *Ætna El. Co.* v. *Deeves*, 108 N. Y. Supp. 718, 721; *Spencer* v. *Barnett*, 35 N. Y. 94; *Tiley* v. *T. I. Hotel Co.*, 9 Hun, 424; *Shultz* v. *Quereau Co.*, 210 N. Y. 257; *Riverside Cons. Co.* v. *New York*, 218 N. Y. 596; *Troy P. W. Co.* v. *Yonkers*, 207 N. Y. 81; *Schaghticoke P. Co.* v. *G. & J. Ry. Co.*, 183 N. Y. 306; *Gates & Co.* v. *Stevens C. Co.*, 220 N. Y. 38.) This appellant is entitled under its assignment to the entire balance of the fund remaining after payment of the Goodrich and Barber Asphalt Paving Company liens. (*Riverside Cons. Co.* v. *New York*, 218 N. Y. 596; *Bates* v. *Salt Springs Nat. Bank*, 157 N. Y. 322; *Paine* v. *New York*, 180 N. Y. Supp. 351; *Wood* v. *Galway*, 173 N. Y. Supp. 644; *Standard Sand & Gravel Co.* v. *New York*, 172 App. Div. 80; 224 N. Y. 687; *Brill* v. *Tuttle*, 81 N. Y. 454; *McKay* v. *New York*, 46 App. Div. 579.)

*James R. Creary* for Bennett F. Cowles et al., defendants, appellants. The court erred in adjudging that any part of the claim of the defendant, the National Bank of Commerce of Rochester, N. Y., should be paid prior, or preferred to the lien of these appellants. (*Riverside Const. Co.* v. *City of New York*, 218 N. Y. 596; *Ohio S. L. & I. Co.* v. *Johnson*, 10 Ohio C. Dec. 752.) The labor lienors herein did not have to commence separate and distinct actions to foreclose their liens, or to file separate and distinct *lis pendens* in this action. The commencement of this action and the filing of a *lis pendens* by the plaintiff was sufficient to keep the labor liens alive. (*Newman Lumber Co.* v. *Wemple*, 107 N. Y. Supp. 318; *McAllister* v. *Case*, 5 N. Y. Supp. 918; *Neuchatel Asphalt Co.* v. *Mayor, etc.*, 12 Misc. Rep. 26; 155 N. Y. 373; *Brace* v. *City of Gloversville*, 167 N. Y. 452; *McDonald* v. *Mayor, etc.*, 170 N. Y. 409; *Curtis* v. *Hitchcock*, 10 Paige, 403; *Sheridan* v. *Andrews*, 49 N. Y. 478; *Potter* v. *Rowland*, 8 N. Y. 451; *Berger Mfg. Co.* v.

*City of New York*, 206 N. Y. 24.)  The material liens heretofore filed had impounded the whole of the state fund and placed it beyond the reach of the assignment to the bank by the time such assignment became effective. (*Riverside Const. Co.* v. *City of New York*, 218 N. Y. 596.)

*William J. Doetsch* and *Edwin L. Dolson* for respondent.  Certain of the labor lienors failed to commence an action or to file *lis pendens* in this action within six months after the last order extending their lien, and their liens, therefore, expired before judgment, and they thereby lost whatever rights they ever had.  (*Bradley & Sons* v. *Huber Co.*, 146 App. Div. 360; 210 N. Y. 627.)

HISCOCK, Ch. J.  This appeal deals with conflicting claims to a surplus arising under a contract for road construction between the plaintiff and various defendants and between defendants themselves.  The parties all claim under mechanics' liens with the exception of the National Bank of Commerce which claims under an assignment by the contractor of moneys due and to grow due upon the contract.

In 1914 one Cowles entered into a contract with the state for the construction of a highway.  Materials were sold to him and labor performed for him for the purpose of carrying out said contract by one Goodrich and by the parties to this appeal except the bank, which was an assignee of funds under his contract as above stated. After a while Cowles defaulted in the performance of the contract and the state completed the same at an expense which left a balance due to the contractor of $7,646.46. In due time to make them effective, liens were filed against this balance by Goodrich on October 30, 1914, for the sum of $206; by plaintiff, November 5th, 1914, at 10 A. M., for $8,668.84; by the Barber Asphalt Paving Company on November 5, 1914, at 4.30 P. M., for $2,154.02,

and by Cowles and others on and subsequent to December 21, 1914, for various sums claimed to be due them respectively for labor. In addition the bank on October 31, and November 25, 1914, in the proper offices filed the assignment by the contractor above referred to. The Goodrich claim has been collected in full and is not a subject of dispute or consideration on this appeal.

In due time plaintiff commenced this action to foreclose its lien, duly filing notice of pendency and joining as defendants the various claimants now represented on this appeal. The judgment at the end of the resulting trial after providing for the payment of costs to various parties, in substance awarded to plaintiff payment in full of its claim after applying certain credits which it conceded and thereafter in the order in which their notices of lien and assignment had been filed payment of their respective claims to the Barber Asphalt Paving Company, the National Bank of Commerce and the labor lienors, the result as between the latter and the bank being accomplished in a somewhat circuitous manner, description of which is immaterial in this discussion. The Appellate Division modified this judgment by substantially reducing the amount awarded to plaintiff on the ground that part of the materials included in its claim had been retaken by it and should be credited upon its claim at the price at which they had been sold to the contractor rather than at the amount of the net proceeds realized upon the resale of such materials after retaking.

With this statement of the general facts we proceed to the consideration of the claim and rights of plaintiff and of the various labor claimants whose rights alone are in dispute upon this appeal, stating in connection therewith such further special facts as may be necessary to such consideration.

The plaintiff was a manufacturer of cement and it made a contract to furnish the contractor a large amount

of its product for use in the performance of his contract. Two distinct lots' of cement which it sold and delivered to the contractor under its contract were by him never used thereon. One lot was by him diverted without knowledge or consent of plaintiff through sale to other parties, but whether before or after his default we are unable to determine. The other lot had been delivered by shipment to the contractor, but still remained on board the cars at the time he defaulted and ceased building operations. After plaintiff had filed its lien for the full amount of its claim including both lots of cars, it made an arrangement with the contractor with respect of the last lot which read as follows: " You (plaintiff) are authorized to retake 11 cars of cement shipped by you to H. M. Cowles   *   *   *   and to dispose of the same in the best market possible and apply the net proceeds on your account." There seems also to have been some consultation between the plaintiff and the appellant bank on this subject but which we do not regard as important. Thereafter plaintiff did retake the cars of cement as stated, sold the cement and applied the proceeds generally on its claim against the contractor. It is in substance found and seems to be conceded that it was desirable for all parties to sell this cement which would have deteriorated if allowed to stand and against which considerable track demurrage was running and that plaintiff acted in good faith in procuring as advantageous a price as it could for the cement. Nevertheless as the result of sale at a lower price than that at which the cement had been sold to the contractor and as the result of demurrage and various expenses the net proceeds received by the plaintiff and credited on its account were substantially less than the price at which the cement had been sold and at which it was included in plaintiff's lien.

Under the contract between plaintiff and the contractor the bags in which the former shipped its cement

could be returned by the latter and credited at a certain price per bag. At the same time at which the contractor authorized the plaintiff to retake the cement he also authorized it to retake such bags as it could find and credit them on the account. It thus recovered a large number of bags which it credited generally at the sum of $2,763.30 upon the indebtedness due from the contractor.

Upon these facts and independent of the claim of the labor lienors to a priority under the statute, which will be discussed hereafter, three questions arise in respect of plaintiff's claim and its rights thereunder.

The first is the one arising in connection with the resale by the contractor of certain carloads of cement, as above stated, whether a materialman who in good faith furnishes materials to be used in the completion of a contract within the scope of the Mechanics' Lien Law, loses his right to a lien therefor because the contractor without his knowledge or consent has diverted the materials to some other purpose and has not in fact used them in the construction of the improvement as contemplated. Strangely enough this question does not seem to have been decided by this court and the guide to the answer to be given of course must be found in the interpretation to be placed upon the statute covering liens.

That statute (L. 1911, ch. 873, as amended by L. 1916, ch. 507) provides (§ 5): ' A person performing labor for or furnishing materials to a contractor, his subcontractor or legal representative, for the construction of a public improvement pursuant to a contract by such contractor * * * shall have a lien '' therefor; (§ 12) '' the notice (of such lien) shall state * * * a description of the public improvement upon which the labor was performed and materials expended, the kind of labor performed and materials furnished; '' (§ 1) '' The term ' materialman ' * * * means any person who furnishes material for such improvement.''

We have so often referred to the purpose of this act to protect materialmen and laborers who furnish either materials or labor for purposes of construction and have so often recognized that the statute is to be liberally construed to effect this purpose that it is unnecessary to say anything more along that line. When we construe the statute in the light of this policy declared by the legislature and the courts and with a view to its practical administration it seems to us that a materialman who in good faith furnishes materials to a contractor with which to construct a building or build a road should not be deprived of his right to a lien because the contractor without his knowledge or consent diverts the material to some other purpose. One who thus supplies material comes within the fair meaning of section 5 of the statute which gives a lien to "a person * * * furnishing materials to a contractor * * * for the construction of a public improvement." He has "furnished" his materials when he has delivered them to the contractor in good faith for the purpose of being used in the improvement. Their actual use is something beyond his power and within the control of the contractor. It is true that section 12, which requires the notice of lien to give a description of the improvement "upon which the labor was performed and materials expended," by itself involves the idea that the materials have actually gone into the improvement. All of these provisions, however, are to be considered together and harmoniously interpreted with reference to each other and we do not think that this last provision worded in accordance with what would be the ordinary experience is to be construed as overruling or destroying the other provision which has been quoted. Section 5 is the fundamental provision. That is the one which gives the lien and prescribes the conditions under which the right to it shall exist. Section 12 simply specifies details of procedure — how notice shall be given of a right which already has been secured.

It recognizes the basis of this right by requiring a statement of the name of the contractor for whom the labor was performed or " materials furnished," and we cannot believe that it was the intention of the legislature to cut down the right to a lien which it had already given in such a case as we are discussing by the mere use of the word " expended," which in a majority of cases would be entirely appropriate. As supporting the view that the legislature did not intend by this definition of the notice of lien to deprive the materialman of his right to a lien if his materials had been diverted by the contractor, reference may be made to section 9 of the statute regulating the form of notice in cases of materials furnished for private improvements. The only requirements there ·specified which are important in the present consideration are that the notice shall give a statement of the materials furnished and a description of the property subject to the lien. If it had been the intention of the legislature by using the word " expended " in prescribing the form of the notice in cases of public improvements to require actual use of the materials in the improvement, it is scarcely conceivable that language expressive of the same idea would have been omitted in prescribing the form of notice in other cases. Therefore, we think that the word " expended " will be construed as covering a case where the materialman has furnished materials to be expended and used and this purpose has been defeated after they have left his possession by the act of the contractor without his fault.

It is true that this construction of the act may at times result in injury to other lienors whose liens are subordinated to those of materialmen for materials furnished for but not actually used in the construction of an improvement. But in our judgment, having in mind. that interpretation of the statute which will be for the benefit of materialmen as a class, this possible disadvantage will be small as compared with the expense and

dangers which would follow an interpretation that a materialman who had honestly furnished materials for the construction of an improvement could only have a lien on proof that his material had actually gone into the improvement. This interpretation would place every materialman who had in good faith supplied materials and lost possession of them at the mercy of a dishonest contractor who was willing to divert them to some other purpose. At the very least such a materialman would be required as a matter of ordinary precaution to send an inspector with each lot of materials he furnished who should watch them until they had finally been placed in the improvement. It is possible that even then the contractor might defeat the safeguards of all this watchfulness by pulling material out of the building after the inspector had departed. It is at once apparent how much the burdensomeness of such a necessity would impair the practical benefit of the statute.

Such an interpretation would be disadvantageous even for contractors of limited means. Now they are able to secure the delivery of materials because the materialman has the security of a lien which he may establish. But if this right was impaired by the possibilities of diversion materialmen inevitably would be much less willing to trust contractors and enable them to complete contracts. The honest as well as the dishonest contractor would be embarrassed by such possibilities.

This interpretation of the statute finds support in *Upson* v. *United Engineering & Contrg. Co.* (72 Misc. Rep. 541, 553, opinion by Judge POUND); *Sears* v. *Wise* (52 App. Div. 118), cited with approval in the foregoing case and also in the following decisions of courts of other states having statutes largely similar to our own: *Burns* v. *Sewell* (48 Minn. 425); *Frudden Lumber Co.* v. *Kinnan* (117 Ia. 93); *Beckel* v. *Petticrew* (6 Ohio St. 251); *Hercules Powder Co.* v. *K. L. F. & J. R. R. Co.* (113 Tenn. 382, 404); *Bell* v. *Mecum* (75 N. J. L. 547, 549); *Salzer Lumber*

*Co.* v. *Lindenmeier* (54 Colo. 491); *Maryland Brick Co.* v. *Spilman* (76 Md. 337); *White* v. *Miller* (18 Penn. St. 52); *Kalbfleisch* v. *Hurley* (34 Ont. Law Rep. 268).

But while we thus conclude that plaintiff was not deprived of its right to a lien by the mere fact that cement which it furnished was not actually used in the performance of the contract through diversion by the contractor, we think that the disposition of the cars which were retaken by the plaintiff after the contractor defaulted leads to different consequences and deprives plaintiff of a right to enforce its lien therefor.  Plaintiff's right to a lien for an amount including the price of the cement shipped in those cars was based on the theory that such materials had been furnished to the contractor for use on the improvement and when plaintiff retook the materials its act related back to the original delivery and was entirely inconsistent with and destructive of the theory sustaining a lien.  The plaintiff seems to argue that by filing its lien its right to enforce a lien for the value of the cement became fixed and could not be destroyed by subsequently retaking it.  We do not accept this view.  We do not think that a vendor can take back his materials and at the same time claim that they have been furnished for construction of an improvement.

Lastly, plaintiff urges that it is entitled to greater relief than it has secured under the principles governing the application of payments on an indebtedness.  It will be remembered that plaintiff recovered from the contractor a quantity of cement bags of the value of several hundred dollars, which have been credited as a payment on its claim.  It says that neither the debtor nor itself having indicated how this payment should be applied it rests with the court to determine the application and that the payment ought to be applied in satisfaction of items for which no lien can be filed rather than of an indebtedness which is secured and can be enforced by a lien as has now in fact been done.

We think there are effective obstacles to the adoption of this proposition. Amongst them is the one that at the time the bags were credited on the account the balance unpaid on the purchase price of the retaken cement had not been fixed. That was only determined after a resale of the cement which occurred some time after the bags were retaken and credited on the account. On the evidence presented to us the value of the bags cannot be applied to ·the satisfaction of an indebtedness not ascertained when they were retaken for credit.

Some of the appellants filed liens for labor performed by them respectively on the improvement in question and they claim that such liens should have priority of payment over the liens and claims of other parties. This claim is based upon section 25 of the Lien Law (Cons. Laws, ch. 33) which provides: " In all cases laborers for daily or weekly wages shall have preference over all other lienors having liens arising under the same contracts pursuant to this article, without reference to the time when such laborers shall have filed their notice of lien."

The record on appeal so inefficiently discloses the claims of these lienors that it is difficult to determine therefrom just what their rights may be. ˙The notice of appeal does not adequately disclose who are appealing. The answers said to have been served in their behalf setting forth their claims are not printed in the record. Concededly copies of these answers were not served upon defendants with conflicting claims as required by the statute. Copies of the orders whereby the time within which the right to enforce their respective liens is said to have been extended are not printed but we are assured by their counsel that if any one will search the record of the proper clerk's office he will there find orders sustaining his claims of extension. Desiring to avoid, if possible, further depletion of the fund available for payment of creditors by sending the case back for further proceedings we have concluded to determine the rights

of these lienors as best we can from the incomplete record supplemented by facts which seem to be conceded by all the parties. Pursuing this course it seems to be clear that they are not entitled to the priority which they seek.

In the first place we think that before the trial of this action was reached they had lost under the statute the right to enforce their respective liens. Section 18 of the Lien Law provides: " If the lien is for labor done  *  *  * for a public improvement it shall not continue for a longer period than three months from the time of filing the notice of such lien, unless an action is commenced to foreclose such lien within that time, and a notice of the pendency of such action is filed  *  *  * or unless an order be made by a court of record, continuing such lien, and a new docket be made stating such fact."

It seems to be conceded that the notices of liens of these claimants were filed in the latter part of 1914 and that orders were made continuing such liens respectively to a date subsequent to the time when this action was commenced but prior to the time of trial, and that no *lis pendens* was ever filed upon any of the claims. It is the present contention that the commencement of this action wherein said lienors were joined as defendants obviated the necessity of commencement of an action to foreclose the same. We think that the commencement of the action did thus obviate the necessity for the commencement of an action on these liens but that it did not relieve these defendants appearing and setting up their respective claims and liens from filing a notice of pendency thereof, which was not done. If joinder of a lienor as defendant in an action commenced by some one else is to serve the same purpose in continuing his lien as though he had commenced the action himself we see no reason why he should not be compelled, as the statute read at the time involved in this litigation, to comply with the requirement of filing notice of pendency which would have applied if he had commenced the action as plaintiff.

The objects of a *lis pendens* are well understood and we think that these defendants asserting an affirmative claim in an action brought by some one else were required to file such notice of pendency. (*Bradley & Son* v. *Huber Co.*, 146 App. Div. 630; affd., 210 N. Y. 627.) That such was the interpretation by the legislature of the statute is indicated by the fact that in 1916, and too late to help these appellants, an amendment to section 18 above referred to was adopted providing that " If a lienor be made a party defendant in an action to enforce another lien, and the plaintiff or such defendant has filed a notice of the pendency of the action within the time prescribed in this section, the lien of such defendant is thereby continued." We think, therefore, that the neglect of counsel for these claimants to file the notice of pendency is a bar to their claims even if otherwise entitled to priority. But we think there is another reason why they are not entitled to priority of their liens over those of other lienors.

The last party to be paid from the fund as the judgment now stands is the bank under its assignment from the contractor and the balance applicable thereto is insufficient to pay its claim in full. Of course the statute of priority for laborers' liens does not provide or mean that such liens are liens on or payable out of the liens and claims thereunder of materialmen. It simply provides and means that such laborers' liens shall be paid out of the fund before the liens of materialmen. Therefore, if priority of claims against the fund was given to these laborers' liens over those of the materialmen the result would simply be that the liens of the latter would be pushed farther down on the fund and that there would be less balance applicable to the payment of the bank under its assignment. The only practical effect of such priority would be visited upon the bank and its claim under its assignment would be made subordinate to these additional liens. This result cannot be permitted under the statute.

It has been held that this right of priority of laborers' liens does not exist as against an assignment by the contractor of moneys due or to grow due on his contract. (*Riverside Contrg. Co.* v. *City of New York*, 218 N. Y. 596.)

Therefore, although reaching our conclusion by a different course than that followed by the Appellate Division we think that its judgment correctly distributes the fund in controversy and should be affirmed, with costs to the respondent Barber Asphalt Paving Company against plaintiff and the appellant labor lienors, and with costs to appellant the National Bank of Commerce against said appellant labor lienors.

Hogan, Cardozo, Pound, McLaughlin, Crane and Andrews, JJ., concur.

Judgment accordingly.