Arthur W. Lonschein, J.
Plaintiff, a manufacturer, supplied certain air conditioning equipment in connection with the erection of a diner owned by the defendant Athpez Diner, Inc. (Athpez). Athpez was the assignee of a lease of a parcel of realty owned by the defendant Karpinecz & Sons, Inc. (Karpinecz). The lease obligated the lessee to erect a diner on the demised premises and required it to remove the diner at the end of the lease term. Athpez entered into an agreement with an air conditioning contractor (not a party to this action) for the installation of air conditioning equipment (supplied by plaintiff) in the diner which was being constructed and erected on the premises. After the completion of the air conditioning work Athpez issued a series of notes representing which was then the unpaid balance due the air conditioning contractor. The defendant, Ed Val Associates, Inc. (Ed Val) issued its check for the cost of the air conditioning to plaintiff and then stopped payment. Plaintiff filed a mechanic’s lien against the realty involved, after the issuance of the notes and prior to *721 payment thereon. At present, Athpez, having paid most of the notes, is in default under the last notes, at least to the extent of the tenor thereof.
Athpez, in causing the diner to be erected, entered into a security agreement with the manufacturer of the diner that it, the diner, would remain personal property for financing purposes pursuant to section 9-313 of the Uniform Commercial Code. The diner had been manufactured by the secured party (who is not a party to this action) in its factory and had been placed on the demised premises under the agreement with the secured party, the diner manufacturer and Athpez. Financing statements describe the diner as personal property and were filed pursuant to the Uniform Commercial Code by the diner manufacturer prior to the filing of the mechanic’s lien.
Defendant Athpez now moves for summary judgment alleging that first, the issuance of the notes prior to the filing of the mechanic’s lien constitutes full payment to the air conditioning contractor, thereby negating any responsibility to materialmen and subcontractors and second, the financing agreement filed in Albany and in the New York City Register’s office describing the diner as personalty was notice to the world as to its nature, and being personal property, a mechanic’s lien could not attach to it.
The plaintiff cross-moves for summary judgment against Athpez alleging that first, its materials, which remain unpaid for, were used for the improvement of real property, and second, that all payments made to the general contractor by Athpez, subsequent to its receipt of notice of the lien was in violation of the Lien Law, at least to the extent of those sums due it at that time. The plaintiff also moves for summary judgment against Ed Val on the stopped check.
Defendant Athpez’ motion for summary judgment is denied. Fact issues exist on its contentions regarding payment prior to the lien filing since it is dependent upon the agreement between the parties to the notes including intent and other factors which enter into the question for determining the purpose of the notes and thus mandate the denial of such relief. Its argument that the diner is personal property precluding the filing of a mechanic’s lien is without merit. The very nature of the modern diner, a direct result of America’s eating habits and motoring conveniences is that it is a structure — a building; and certainly, no matter how it is characterized in a financing statement, it is an improvement to real *722 property. Perhaps there was a time when the ancestor of the modern diner, the surplus railroad dining car, often called a "lunch wagon” (perhaps in tribute to its mobility and lack of permanent attachment to real property) could have by its nature been called a chattel — but no more. Those elegant structures of brick, chrome, glass and marble serving hundreds at a time with food ranging from coffee and cake to lobster thermador, Chateaubriand, Beluga caviar and all the gastronomical delicacies that one can imagine can hardly be called chattels by the world, no matter what two or three parties chose to call one particular diner.
No matter what a diner may be called or may be genetically, an examination of the applicable sections of the Lien Law puts to rest the argument raised by the defendant Athpez. Section 3 of the Lien Law provides for the filing of a lien in connection with the improvement of real property. In interpreting the Lien Law, it is to be liberally construed to secure to purposes for which it was intended, namely, the protection of that class of people who perform services or supply the material for the improvement of realty. (Shultz v Quereau Co., 210 NY 257; Giant Portland Cement Co. v State of New York, 232 NY 395.)
Section 2 of the Lien Law defines real property in its broadest sense and includes "fixtures.” An improvement is defined therein as "erection * * * of any structure upon, connected with * * * any real property and any work done upon such property or materials furnished * * * and shall include * * * materials furnished in equipping any such structure”. (Lien Law, § 2, subd 4.)
There is no question presented in this lawsuit as to priorities between the secured party (who is not a party to this action) and the plaintiff. The protection afforded under section 9-313 of the Uniform Commercial Code is for the holder of the security agreement (the diner manufacturer) and not the purchaser of the fixture (Athpez). It is merely a method by which the secured party is protected upon compliance with the statute. It does not, in any way, change the nature of the fixture, except to the enforcement of the secured party’s rights. Those rights, not being here in issue, the court need not determine them. As between a lienor and the holder of real property, the erection of the diner fits squarely within the definition of section 2 of the Lien Law as does the air conditioning equipment. Assuming the success of the foreclosure, *723 the priorities between the secured party and the plaintiff may be litigated. The parties to a security agreement may not inflict upon this plaintiff a definition of personalty so as to avoid the consequences of the Lien Law (which must be liberally construed) except in those limited cases authorized by some other statute. In any event, the protection of section 9-313 of the Uniform Commercial Code is for the secured party and not for the debtor, Athpez, and thus, it does not have standing even to raise the argument, absent those definitions of section 2 of the Lien Law, that the diner is personalty.
Plaintiff’s cross motion is denied since a fact issue exists as to payment prior to the filing of the lien. If the trial reveals that the contractor took the notes as full payment — perhaps intending to discount them, it could very well have terminated Athpez’ obligations to subcontractors and suppliers.
As to the motion for summary judgment against Ed Val, fact issues exist as to whether or not the check drawn by Ed Val was converted so as to preclude plaintiff’s recovery thereon. Plaintiff’s status between it and Ed Val are fact issues to be decided at the trial.
The motion and cross motion are denied.