OPINION OF THE COURT
Thomas E. Mercure, J.
Wade Lupe Construction Co., Inc. (Wade Lupe) moves to vacate the request of Zaleski Snow Guards (Zaleski) for a verified statement pursuant to Lien Law § 76.
The relevant entities involved in the subject public improvement contract for construction of the Schoharie County Office Building and their respective roles, in progression, are as follows:
1. The County of Schoharie, owner
2. Wade Lupe Construction, general contractor
3. B. Sheber & Sons, roofing subcontractor
*739 4. Zaleski Snow Guards, materialman
It is undisputed that in furtherance of the contract Sheber ordered and took delivery of a quantity of snow guards from Zaleski, which snow guards were, at least initially, intended to be incorporated into the improvement. The snow guards were not installed, however, but were, rather, retained by Sheber. The snow guards were never paid for and form the basis for Zaleski’s claimed lien. It is also undisputed that, thereafter, and due to Sheber’s refusal to deliver or install the first order of snow guards, Wade Lupe placed a second order with Zaleski, which snow guards were delivered, paid for, installed and incorporated into the improvement.
The sole legal issue to be determined is whether the "diversion” exception first enunciated by the Court of Appeals in Giant Portland Cement Co. v State of New York (232 NY 395) creates a lien in favor of Zaleski notwithstanding the fact that the subject snow guards were concededly not incorporated into the improvement.
In Giant (supra), the plaintiff supplied a large quantity of cement, shipped in bags by rail, to the contractor for use in his performance of a construction contract. Subsequent to receipt by the contractor, one lot of the cement was sold by him to a third party and, of course, not incorporated into the improvement. The other lot remained in railroad cars at the contractor’s place of business for a period of time and, at a time subsequent to the filing of plaintiff’s lien, was returned to the plaintiff by agreement for sale in mitigation of damages.
The court allowed the lien as to the first lot upon policy grounds, so as not to "place every materialman who had in good faith supplied materials and lost possession of them at the mercy of a dishonest contractor who was willing to divert them to some other purpose” (232 NY, at 405). The lien was disallowed as to the second lot, however, because of the fact that the cement was retaken by the plaintiff, albeit absent any express or implied waiver of rights and subsequent to filing of a lien thereon. It stated: "Plaintiff’s right to a lien for an amount including the price of the cement shipped in those cars was based on the theory that such materials had been furnished to the contractor for use on the improvement and when plaintiff retook the materials its act related back to the original delivery and was entirely inconsistent with and destructive of the theory sustaining a lien. The plaintiff seems to argue that by filing its lien its right to enforce a lien for the *740 value of the cement became fixed and could not be destroyed by subsequently retaking it. We do not accept this view. We do not think that a vendor can take back his materials and at the same time claim that they have been furnished for construction of an improvement” (232 NY 395, 406, supra).
Although a careful reading of Giant (supra) gives no indication that the subject cement was ever delivered to the actual construction site or that the "diversion” theory requires such delivery, the Giant rule was stated in American Blower Corp. v James Talcott, Inc. (18 Misc 2d 1031, 1035, affd 11 AD2d 654, lv denied 11 AD2d 928, affd 10 NY2d 282) to be that "[djelivery of the materials to the site of the improvement, even without proof of incorporation therein, would be sufficient to establish a valid lien in favor of the materialman” (emphasis supplied). In Matter of P.T. & L. Constr. Co. v Winnick (59 AD2d 368, 370), our Third Department, Appellate Division, stressed the fact that Giant is in fact a limited exception to the general rule that "entitlement to relief under the Lien Law is predicated upon a showing that labor or materials have been furnished and have been expended or used so as to have become an inseparable part of the object of the particular contract.” Significantly, the court stated: "[I]t should be remembered that liens provide a limited remedy and are generally used to recover the fair value of that which, because of its use, is now physically or logically unrecoverable” (59 AD2d 368, 369, supra).
In the instant case, the logical underpinning for the Giant "exception” (supra) and, in fact, the protection afforded by Lien Law §§ 5 and 12, is conspicuously absent. First, the materials were never delivered to the construction site and were, in fact, not converted. They were delivered to and retained by a subcontractor. Their current location is known, and they are not physically or logically unrecoverable. Second, the subsequent conduct of Zaleski was altogether inconsistent with the lien which it asserts. To become aware of the subcontractor’s retention of the materials and to thereafter deliver and accept payment for substitute materials is entirely analogous to the acceptance of return of the second lot of cement in Giant. Zaleski simply cannot profit from sale of snow guards *741 which were actually incorporated into the improvement and assert the theory that the first order was furnished for use on the improvement as well.
Inasmuch as the court determines that Zaleski does not possess a valid lien, it is not a lienor and is not entitled to a Lien Law § 76 statement. The motion is granted.