UNITED STATES FIDELITY & GUARANTY CO. v. CITY OF CANTON et al.

(Division A. June 9, 1930.)

[128 So. 744. No. 28643.]

H. B. Greaves, of Canton, for appellant.

J. A. Covington, Jr., of Meridian, for appellant.

**W. H. & R. H. Powell,** of Canton, for appellant.

684

**A. K. Foot,** of Canton, for appellees.

White & McCool, of Canton, for appellees.

Argued orally by **J. A. Covington** and **H. B. Greaves**, for appellant, and **A. K. Foot**, for appellee.

**Cook, J.,** delivered the opinion of the court.

The appellant, United States Fidelity & Guaranty Company, filed a bill of complaint in the chancery court of Madison county, Mississippi, against the city of Canton, and the W. J. Horie Construction Company. There

was a decree pro confesso and final against the W. J. Horie Construction Company, but a demurrer of the city of Canton was sustained and the bill was finally dismissed as to it, and from the decree so dismissing the bill this appeal was prosecuted.

The averments of the bill of complaint were in substance as follows: That during the year 1927 the city of Canton advertised for bids for the construction of certain curbs and gutters and the paving of certain of its streets according to plans and specifications prepared by its engineer and then on file in the office of the city clerk; that among other things it was required by the said city that the successful bidder for said work should enter into a good and sufficient bond with the said city to guarantee the faithful performance of the work and the contract; that the bid of the W. J. Horie Construction Company was accepted, and the contract to do the work was awarded to it upon its entering into a bond with a surety company as surety, which should be acceptable to the city attorney. That thereupon the W. J. Horie Construction Company applied to the appellant to furnish such a bond as the city required; that the said application being acceptable to the appellant it then executed a bond in the sum of thirty thousand dollars as required by the city, and the same was accepted by the city; that thereafter the city, by its proper authorities, entered into a contract with the said W. J. Horie Construction Company to pave certain streets mentioned in said contract and to lay concrete curbs and gutters as set out and mentioned therein; that thereafter the said construction company proceeded under said contract and the provisions of said bond to construct said curbs, gutters, and paving, and did complete the construction of the same according to the plans and specifications on or about the 6th day of November, 1928, as shown by the final estimate prepared by the city engineer, a copy of which estimate was filed as an exhibit to the bill.

The bill further charged that, although by the provisions of the contract and the bond, the W. J. Horie Construction Company was obligated to pay for all labor and material furnished and used in the construction of said paving, curbs, and gutters, the bond being expressly made a part of the contract, yet it failed to pay certain bills and accounts for labor performed and material used in the construction of said paving, curbs, and gutters. That on or about December 4, 1928, the said city of Canton gave notice to the public that the said construction company had completed the work, and the city had, on the 19th day of November, 1928, settled with the said construction company, and advised all persons having claims or demands against said contractor to take notice accordingly. That prior to the settlement with the said contractor on November 19, 1928, the appellant ascertained that the contractor had not paid all parties furnishing labor and material which were necessary and which were used in the construction of this paving, and the curbs and gutters, the various claims and amounts alleged to be due them being listed. That at the time it made the final settlement with the contractor on November 19, 1928, the said city had notice of one claim for five hundred fifty-one dollars and sixty-seven cents, which the said contractor by false affidavit asserted it had paid; and that notice of the other unpaid claims was given to said city after said final settlement.

The bill of complaint further averred that the claims listed and paid by the appellant represented materials and labor necessary to and used in the construction of said curbs, gutters, and paving, and that one of the provisions of the bond which was executed by the contractor and the appellant surety company, and accepted by the city, was as follows:

"The obligee shall, before making to the principal, the final payment provided for under the contract herein referred to, deliver written notice to the surety at its of-

fice aforesaid, and the written consent of the surety thereto obtained.''

It was further averred that one of the provisions of the contract which was also made a part of the bond, and was a part of the consideration for the execution of the bond by the appellant, was that the city obligated and bound itself to the said surety as follows:

''Payments for said work will be made as the work progresses on estimates made by the city engineer, and on his approval, not to exceed eighty-five per cent of the amount of said estimate; fifteen per cent being reserved by the city until the said pavement and concrete curbs and gutters are finally completed and accepted by the city engineer, which said fifteen per cent so reserved shall be held as additional or cumulative security for the faithful performance of said contract, and will be paid to the contractor whenever said pavement and concrete curbs and gutters are completed according to the contract and approved and accepted by the city engineer and the mayor and board of aldermen of the city of Canton.''

It was also alleged that; notwithstanding the fact that all these and other provisions were embodied in the contract, not only for the protection of the city, but for the protection of the surety as well, and were a part of the contract for which the appellant agreed and undertook to execute the bond, the said city passed an order authorizing and directing a settlement with the contractor upon the approval of its final estimate by the city engineer and city commissioner, and that in pursuance of said order the said city settled in full with said contractor for all balance due under his contract, including the fifteen per cent retainage, notwithstanding the fact that under the contract and bond it was provided that the said fifteen per cent retainage would be retained until the contractor had completed the work as provided for by the plans and specifications, and had paid for all labor and material furnished in the construction of said

pavement, curbs, and gutters, and that the said fifteen per cent retainage was paid out to the said contractor without the knowledge and consent of the appellant.

It was also charged that the contractor had never completed the contract and was not entitled to the fifteen per cent retainage, because the appellant had never consented to the payment of this retainage to the contractor, and because the contractor had failed and refused to pay the said claims of materialmen and laborers, and the appellant had been compelled to pay the same. That the said contractor could not have required the said city to pay the retained percentage until the contract had been discharged in every respect, and it had discharged its obligation to the city of Canton and to the appellant by complying with said contract, which it failed to do in the payment of materialmen and laborers. That in this state of the case the contractor could not have enforced the payment of retainage until after the contract had been complied with, regardless of the provision in the bond requiring written consent from the appellant, and that the written notice to the appellant required by section 2 of the bond was never given, and the written consent or other consent of the appellant was never given that said fifteen per cent retainage should be paid out.

It was further averred that, notwithstanding the obligation of the city of Canton under the law and under the express obligation of the bond that it would not make final settlement with the contractor until after his work and accounts had been approved and accepted by the city engineer and the mayor and board of aldermen of said city, and after it had given notice to the appellant that it was ready to make final settlement with said contractor, it disregarded its contractual and legal obligations to the appellant with regard to the fifteen per cent retainage, and did make final settlement and pay over to the contractor all of the retainage in its hands, provided for by the contract, without either of these condi-

tions having been complied with. That by reason of the fact that it did not notify the appellant that it was preparing to make final settlement with the contractor, and that the said contractor did not pay all the claims for labor and material, the said city, under its contractual relations with the appellant, as disclosed by the contract and bond, was indebted to the appellant in the full amount of said retainage, being the sum of four thousand three hundred sixty-three dollars and ninety-seven cents.

The bill further charged as an additional reason why the appellant was entitled to recover this retainage, that under the provisions of the contract the fifteen per cent retainage provided for in the contract and bond was required not only as a protection and additional security for the city, but was also for the protection of the surety. That, on the failure of the contractor to fully complete his contract by paying all debts to parties furnishing material and labor, the appellant was required to pay the same, and, having done so, it was subrogated to the rights of the contractor and entitled to receive the same, and consequently the said city had no right or authority to pay over the fifteen per cent retainage to the contractor, regardless of the provisions of the bond, which was a contract between the appellant and the said city not to pay over to the contractor any of the fifteen per cent retainage until after all the debts contracted in the construction of said work had been paid. That the appellant being under the law subrogated to all the rights which the contractor would have had if it had fully completed its contract, the said city had no right to settle in full with the contractor, and having done so, and having wholly disregarded its legal, equitable, and contractual obligations to the appellant, it was entitled to recover from said city the amount of all claims paid by it to the extent of the full amount of said retainage, and that in law the said city now has the said sum in its possession, or under its control, and holds the same for the use and

benefit of the appellant, and refuses to pay the same. The bill prayed for a decree against both the contractor and the city of Canton for the full amount of the fifteen per cent retainage, which had been paid to the contractor by the said city. As exhibits to the bill of complaint there were filed copies of the plans and specifications of the work done, the contract and bond, and also statements of the various claims for material and labor paid by the surety.

To the bill of complaint the city of Canton filed a demurrer attacking the legal sufficiency of the bill on many grounds, the most of which may be disposed of by consideration of the first ground, that is, that there is no equity or ground of relief stated in the bill.

In addition to those already herein stated, there are other provisions of the specifications, application for bond, contract and bond which have a bearing upon the questions presented for decision. In the specifications it is provided that: ''The board may retain from money otherwise payable under this contract so much as they consider may be required for the expense or damages arising from said causes and for the payment of any claim notice of which is signed, sworn to and filed in the office of the city clerk, and may with this money settle claims, otherwise before the payments will be made the contractor, he must satisfy the board that he has paid these outstanding claims.''

Under the heading of ''Payment'' the specifications further provide that: ''As long as the work proceeds satisfactorily under the contract the engineer will make up an estimate about the 1st of each month for the work done and material delivered to date, and on or about the 10th of the month the board will pay the contractor on such estimates, this amount, less fifteen per cent and all previous payments and charges. Said fifteen per cent may be retained until final settlement, as a part guarantee for the faithful execution of the contract. When the

streets to be improved have been completed and the engineer is satisfied that the conditions of the contract have been fully complied with, he will make up a final estimate of the quantity of the material furnished and work done, and will certify same to the board, together with his recommendation as to the acceptance or stating any defects, which may exist. The board will then formally pass on the whole work, and if same is shown to be in conformity with the contract, and all liens, if any, is charged, the contractor will within thirty days thereafter be paid the balance due him under his contract, provided that he satisfied the board that there are no outstanding claims against the contractor, for which the board might be held liable.''

In the application for the bond the contractor assigned and transferred to the appellant company all deferred payments, and retained percentages, and all money and property that might be due and payable to the said contractor at the time of any default, to be by it credited upon any loss, damage, charge, and expense sustained or incurred by it under its suretyship.

In the contract the contractor agreed to furnish a bond in a surety company acceptable to the mayor and city attorney in the sum of thirty thousand dollars, conditioned for the faithful performance of the work, and for the payment for all materials and labor furnished in the construction of said paving, curbs, and gutters, and the bond was expressly made a part of the contract. In reference to payments the contract provided that: ''Payments for said work will be made as the work progresses on estimates made by the city engineer and on his approval, not to exceed eighty-five per cent (85%) of the amount of said estimate; fifteen per cent (15%) being reserved by the city until the said pavement and concrete curbs and gutters are finally completed and accepted by the city engineer, which said fifteen per cent so reserved shall be held as additional or cumulative

security for the faithful performance of said contract, and will be paid to the contractor whenever said street pavement and said concrete curbs and gutters are completed according to the contract, and are approved and accepted by the city engineer and the mayor and board of aldermen of the city of Canton."

In the case of Canton Exchange Bank v. Yazoo County, 144 Miss. 579, 109 So. 1, it was held that, in view of the statute relating to bonds of contractors engaged in public works, a surety company having paid laborers and materialmen's claims is entitled to be equitably subrogated to the fifteen per cent retained by the obligee in the bond, as against a subsequent assignment by the contractor of all funds under the contract; and, further, that such a contractor has not complied with his contract and performed his obligations thereunder, and cannot require the obligee to pay to him the retained percentage, until he has paid materialmen and laborers who furnished material and labor in the performance of the work. In the above-mentioned case, and also in the case of Mississippi Fire Insurance Co. v. Evans, 153 Miss. 635, 120 So. 738, 742, it was held that "the fifteen per cent retainage provision in contracts of this character is one of the securities of the owner for the performance of the contract by the contractor, and also constitutes a fund to which the contractor's surety has the right to resort in the event it is compelled to pay debts due by the contractor to laborers and materialmen," and counsel for appellant devote much argument to a discussion of the rights of the appellant under the doctrine of subrogation, and cite many authorities from other states and from this court to establish the proposition that upon the failure of the city to give the surety company notice, as required by the bond, the surety was released, at least pro tanto to the extent of the fifteen per cent retainage, from any liability to the city. It is not contended, however, that the failure to give such notice would release the surety

from any liability to materialmen and laborers, and we think this case may be properly disposed of by the application and enforcement of the contractual obligations imposed upon the obligee and the surety by the provision of the bond and contract.

By section 2 of the bond it was expressly agreed and provided that "the obligee shall, before making to the principal the final payment provided for under the contract herein referred to, deliver written notice to the surety at its office aforesaid, and the written consent of the surety thereto obtain," and it is alleged and admitted that the city of Canton did not comply with this provision, and did not give the surety any sort of notice before it made the final payment to the principal, and that the surety did not consent to such payment. The language of this provision is clear and emphatic, and the force and effect of the obligation imposed thereby is unmistakable. This provision was inserted in the bond, and the bond was accepted by the city, in the light of the decisions of this court that the retained percentage under a contract for public improvement is "one of the securities of the owner for the performance of the contract by the contractor, and also constitutes a fund to which the contractor's surety has the right to resort in the event it is compelled to pay debts due by the contractor to laborers and materialmen." The surety company had the right to specify the conditions under which it would be held liable, and the obligee was not compelled to accept these conditions. By the express provisions thereof the bond became a part of the contract between the parties, and the city, having accepted a bond with reasonable conditions as to the payment of the reserved percentage therein specified, became and is bound thereby. It is argued that to so hold will in effect make the city an indemnitor of the surety company against loss by reason of the failure of the contractor to pay materialmen and laborers. We think this is entirely a miscon-

ception of the effect of this provision, and the obligation imposed thereby. By it the city does not undertake to indemnify the surety company against any loss whatever. It is merely a condition precedent in reference to the payment of the funds retained under the contract for the protection, not only of the city, but for the protection, of the surety against loss by reason of the failure of the contractor to fully perform his contract. It imposes no financial obligation upon the city in case of default of the contractor, but merely imposes the simple duty of giving notice of its intention and readiness to make the final payment to the contractor, and of securing the surety's consent to such payment; and for a breach of its contractual obligation to the surety in this regard it is liable for the damages resulting to the surety from such breach.

Counsel for the appellee, however, contend that the city was without the lawful right to contract to give this notice to the surety and to secure its consent before making final payment. There is no merit in this contention. Section 3338, Code of 1906, section 6774, Hemingway's Code 1927, provides that the mayor and board of aldermen of a city shall "exercise full jurisdiction in the matter of streets, sidewalks, sewers, and parks; to open and lay out and construct the same; to repair, maintain, pave, sprinkle, adorn, and light the same." The contract for the construction of the curbs and gutters, and paving of the streets of the city, constituted a matter over which the municipal authorities had full and complete jurisdiction and full power to contract. The contract required the contractor to furnish a bond acceptable to the municipal authorities. The surety tendered a bond containing the stated condition with reference to the final payment to the contractor, and the city accepted the bond and thereby assumed the obligation imposed by this provision or condition. There is no reason why the city could not have obligated itself to make all payments to the contractor and surety jointly, or to withhold the final pay-

ment until notice of its intention and readiness to pay the same to the contractor had been given to the surety, and its consent to such payment had been obtained.

The appellee next contends that in the case of Union Indemnity Co. v. Acme Blow Pipe & Sheet Metal Works, 150 Miss. 332, 117 So. 251, upon provisions of a contract and bond practically identical with those in the case at bar, this court held that the obligee incurred no liability to the surety by reason of the payment to the contractor of the retained percentage, without first giving notice to the surety of its purpose and readiness so to do, and in support of this contention counsel set forth in their briefs the conditions of the bond in that case in reference to such final payment, as shown by the record. A comparison of the conditions of the bond executed in the Union Indemnity Company case with the conditions of the bond in the case at bar will show, however, that the question decided herein was not involved and was not decided in the Union Indemnity Company case, supra, and that that case is not here controlling.

The Acme Blow Pipe & Sheet Metal Works filed its bill of complaint in the chancery court against the surety company, and the board of education of the city of Jackson, and advertised for all others interested to join in the suit. The Union Indemnity Company made its answer a cross-bill setting forth the provisions of the contract in reference to retained percentages, and the stipulation of the bond that "no liability should attach to the surety until the obligee in said bond should deliver written notice to it at its office in New Orleans, and obtain the consent of the surety thereto before paying to the contractor the final payment of fifteen per cent," and averred that the city of Jackson, through its board of education, without notice to the said surety and without obtaining its consent thereto, paid to the contractor one thousand nine hundred twelve dollars and thirty-four cents, in violation of the terms and provisions of

the bond sued on, and that it thereby rendered itself liable to the surety, in the event it should be held liable to the original complainant and the intervenors therein. A demurrer was sustained to this cross-bill, and on appeal it was held that the demurrer was properly sustained, and that "the view taken of the contract was utterly untenable."

The provision and condition of the bond involved in the Union Indemnity Company case, supra, in reference to notice to the surety is as follows:

"Provided, however, that this bond is issued subject to the following conditions and provisions:

"First: That no liability shall attach to the surety hereunder unless, in the event of any default on the part of the principal in the performance of any of the terms, covenants or conditions of said contract, the obligee shall promptly, upon knowledge thereof, and in any event not later than thirty days, after learning of such default, deliver to the surety, at its office in the city of New Orleans, written notice thereof, with a statement of the principal facts showing such default and the date thereof, nor unless the said obligee shall deliver written notice to the surety at its office aforesaid, and the consent of the surety thereto obtained before making to the principal the final payment provided for under said contract."

It will be noted that the provision and condition of this bond was that *no liability* should attach to the surety thereunder, unless the obligee should, within thirty days after learning of any default of the contractor, give notice of said default to the surety, nor unless the said obligee should deliver written notice to the surety at its office aforesaid, and obtain the consent of the surety thereto before making to the principal the final payment provided for under said contract. This is in no sense an affirmative obligation to give such notice and to obtain the surety's consent to the final payment being made, but merely a provision that no liability should attach to the

surety for any default of the contractor, unless such notice was given and consent obtained before such payment. This provision carries its own penalty for any violation thereof by the obligee, and that is, a release of the surety from all liability to the obligee for any default of the contractor. But it is not so in the case at bar. The provision and condition of the bond here involved expressly obligates the obligee to give the notice as a condition precedent to the final payment to the contractor, and for a violation of its contractual obligations in that regard the city is liable for the resulting loss and damages to the extent of the retained percentage so paid out.

Finally, it is contended that there can be no liability against the city for the reason that the claims of materialmen and laborers were paid upon the ex parte statements of the claimants, and there has been no judicial determination that the claims so paid were covered by the bond, and that the items of labor and material composing the claims actually were used in the construction of the curbs, gutters, and paving. These are matters that will properly arise in a trial of the merits of the controversy. In order to be entitled to recover against the city upon any claims or sums alleged to have been paid out by it in settlement of claims of materialmen and laborers, the surety company must show that the claims have been actually paid by it, and that the material and labor for which it paid was furnished and used in the construction of the curbs, gutters, and paving covered by the contract.

The decree of the court below sustaining the demurrer to the bill of complaint will therefore be reversed, the demurrer overruled, and the cause remanded.

Reversed and remanded.