STATE *ex rel* PERSINGER SUPPLY COMPANY *v.* L. T. WEBB, Admr., *et al.*

(No. 7272)

Submitted September 28, 1932. Decided October 28, 1932.

*Goodykoontz & Slaven,* for appellant.
*Randolph Bias,* for appellees.

LITZ, JUDGE:

The Fidelity & Casualty Company of New York, defendant in each of the above styled consolidated cases, has appealed from a decree refusing it judgment upon its cross-complaint against defendant, county court of Mingo county.

June 24, 1924, the county court of Mingo county entered into two contracts with Ira Webb and R. L. Fugate, road contractors; one for the construction of a county road section known as project 18-A, and the other for the construction of two additional sections known as projects 18-B and 18-C, consolidated as project 18-BC. Each contract required the county court to pay the contractors ninety per centum of the monthly estimates as the work progressed and to retain the residue "until after completion of the entire contract and its acceptance by the county court". The contractors also entered into two separate bonds, signed by appellant as surety, guaranteeing performance of the respective contracts and payment of labor and material employed and used in the several projects, in accordance with section 12, chapter 75, Code 1923. Project 18-BC was completed in accordance with the contract, and performance under the contract for project 18-A continued until March 17, 1925. Eleven days later, the county court entered an order reciting that with the consent of Ira

Webb Construction Company, a corporation, which had succeeded to the rights of Webb and Fugate, the county court "took over the work of completing" project 18-A; directing that the county road engineer make such measurements as were necessary to ascertain the amount, if any, due Ira Webb Construction Company on account of work done by it, and report the same to the court for such action as might be deemed proper; and awarding a contract to Williamson Construction & Engineering Company, a corporation, (which had theretofore purchased the equipment of Ira Webb Construction Company) to complete the project on the basis of actual cost plus ten per centum. No further work was done on this project. No payment appears to have been made on project 18-A after February 17, 1925, or on project 18-BC after March 10, 1925.

These suits were instituted in May, 1926, by Persinger Supply Company, a corporation, against appellant and others, to recover judgments on the bonds; in one case for materials furnished by plaintiff in the construction of project 18-A, and in the other, for materials furnished by it in the construction of project 18-BC. The county court of Mingo county is named as a defendant in the caption of the original bills filed at June Rules, 1926, but no relief is sought against it, and it is not listed as one of the parties specifically prayed to be made defendants. One of the grounds of demurrer, filed May 5, 1927, by the Casualty Company to each bill, was that the county court had not been made defendant, although process had been issued and accepted on its behalf. Neither of the answers of the casualty company to the bills, filed with the demurrer, asked any relief against the county court. The plaintiff filed amended and supplemental bills May 7, 1927, specifically making the county court a defendant. June 7, 1930, the casualty company filed amended answers, in the nature of cross-bills against the county court, substantially averring that the provisions in the contracts for the retention by the county court of ten per centum of the monthly estimates was inserted for the protection of the surety on the bonds as well as the county court, and that in order to re-

lieve the surety of its obligation to labor and material men, this fund should be applied to the payment of debts incurred by the contractors for labor and materials used in the work. "The stipulations in a building contract, that the owner will make payments as the work progresses, in accordance with certificates of the architect, but will retain a certain percentage of the amount earned, until the work is completed, are by the weight of authority considered to be covenants for the benefit of the surety, and a violation of these stipulations by premature payments deemed a material alteration of the contract, whereby the surety is released.

"The rule rests upon two reasons—the one is that such a defense deprives the surety of the security which the owner or principal contractor has agreed to hold for his benefit, and the loss of the inducement which otherwise would have operated on the contractor's mind, to induce him to finish the work in accordance with the terms of his obligation." Stearns on Suretyship, section 76-b; *Hamilton* v. *Casualty Co.*, 102 W. Va. 32, 135 S. E. 259.

Counsel for the county court concede the rule of law thus stated, but contend that it should not be applied here because (1) the casualty company unduly delayed the assertion of its claim, and (2) that the evidence fails to show all of the payments made by the county court to the contractor. According to the contention of appellant, the county court still owes the contractors $5,842.30 on project 18-BC and has overpaid them $5,148.42 on project 18-A. As the county court does not appear to have sustained any loss because of the delay on the part of appellant to assert its rights, the plea of laches is without merit. In undertaking to prove the payments made by the county court to the contractors, appellant introduced the clerk of the county court who stated that certain documents on file in his office to which his attention was then called, constituted, as he "supposed", all of the evidence of payments made by the county court to the contractors, but that there might be a checkbook missing. If the evidence thus offered shows all the payments made to the contractor on project 18-BC, the county court is respon-

sible to the casualty company for the retained percentage on this project to the extent of unpaid claims for labor and materials used in its construction. The county court contends in its brief that it should not be charged with retained percentage on project 18-A for the reason that the contract was never fully performed. But a mutual rescission by the parties, terminating the contract, is, in our opinion, evidenced by the court order of March 28, 1925.

The county court does not deny in its answer that there was a mutual rescission of the contract as to project 18-A; its only contention is that it did not wrongfully pay out the residue under the contract. As the county court was bound to retain ten per centum of the contract price until completion and acceptance of the work, it is clearly liable to appellant for the anticipated payment of such fund.

Upon the theory that the bruden was on the county court to prove further payments, if in fact any had been made, the record as it stands is probably sufficient to establish the true condition of accounts between it and the contractors with reference to project 18-BC, but as appellant expresses a willingness to permit it to offer proof, the case will be demanded for that purpose, with the privilege also to appellant to present additional evidence upon this issue.

*Reversed and remanded.*