## FIRST NAT. BANK IN WINFIELD, KAN., v. FIDELITY & DEPOSIT CO. OF MARYLAND et al.

### No. 756.

Circuit Court of Appeals, Tenth Circuit.

June 30, 1933.

Richard B. McDermott and Harry O. Janicke, both of Winfield, Kan., for appellant.

Harry W. Hart, of Wichita, Kan. (Glenn Porter, Enos E. Hook, Edw. H. Jamison, and Getto McDonald, all of Wichita, Kan., on the brief), for appellees.

Before LEWIS and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

This appeal involves the disposition made by the trial court of the retained percentages in the hands of the owner under the terms of a building contract at the completion of the building by the contractor. As usual in such cases the contest in respect to this fund was between the surety on the contractor's bond and a creditor of the contractor with an assignment or order for the fund from the contractor—in this instance an order accepted by the owner.

The facts stipulated or undisputed and found by the trial court upon conflicting evidence so far as material are as follows:

On June 24, 1930, J. M. Fuller entered into a contract with the Scott County Community High School of Scott City, Kan., to furnish all material and labor and to construct a school building for the high school

for which he was to receive $101,473.70. On the same day the Fidelity & Deposit Company of Maryland executed in behalf of Fuller a performance bond to the high school with the usual conditions; also a statutory bond to the state of Kansas conditioned that Fuller would pay all bills for labor and material incurred in carrying out his contract with the high school. Fuller thereafter entered upon the construction of the building and completed it in January, 1931. The high school took possession of the building upon its completion, but never formally accepted it because Fuller had not paid all bills and claims for material and labor furnished by others in the construction of the building. During the progress of the work, the high school made monthly payments on estimates of the architect as stipulated in the contract. When the high school took possession of the building, the retained percentages of the contract price in the hands of the high school amounted to $10,343.64. There was also at that time owing Fuller on the final estimate of the architect the sum of $3,050 for which he was given a check by the high school. He owed at that time on unpaid bills for material used in the construction of the building $23,673.49. On February 7, 1931, Fuller informed the surety company that he owed about $20,000 for labor and material used in the construction of the building which he was unable to pay, and at the same time indorsed to the surety company the check for $3,050 previously given him by the high school. Thereafter the surety company paid bills owing by Fuller for material furnished amounting to $16,079.04, thereby paying out on Fuller's account, after deducting the $3,050 represented by the check above mentioned, a total of $13,029.04.

Between the middle of December, 1930, and the middle of January, 1931, the First National Bank in Winfield, Kan., made four loans to Fuller upon his notes aggregating $10,000. At the foot of each of the notes over the signature of Fuller there was a statement in somewhat different language but to the effect that "this note is an order on the Board of Education of Scott City Community High School contract." On January 22, 1931, Fuller made and delivered to the bank this order:

"Scott City, Kans., Jan. 22, 1931.
"Order to Pay Board of Education Scott County Community High School, Scott City, Kansas.
"Please pay to the First National Bank of Winfield, Kansas, the sum of Ten Thousand ($10,000.00) Dollars, this to be paid after the

completion and acceptance of building from amount now retained.
"J. M. Fuller, Contractor.
"By J. M. Fuller.
"Accepted—
"Matilda Freed, Chairman or President,
"S. W. Filson, Clerk,
"C. E. Norman, Treasurer."

Later both the surety company and the bank claimed the fund in the hands of the high school—the bank to the amount of $10,000. It did not pay either.

In April, 1931, appellee, the Fidelity & Deposit Company of Maryland, commenced this action in the court below against the First National Bank in Winfield, appellant, the Scott County Community High School, Fuller, and others, praying among other things that it be adjudged and decreed to have a first, prior, and superior equitable lien upon the said $10,343.64 in the hands of the defendant high school. In its answer the bank set out the several notes of Fuller to it, including the order on the board of education contained in each, and also in substance the order executed by Fuller on January 22, 1931, above set out. In respect to this order the bank in its answer alleged affirmatively:

"That on January 22, 1931, the said J. M. Fuller in furtherance of the said assignment as represented in said notes and as a part of his agreement with the said First National Bank gave to the said First National Bank his certain further assignment in writing, which assignment was duly accepted in writing by the said defendant, The Board of Trustees of The Scott County Community High School, in words and figures as set forth as Exhibit C attached to the Bill of Complaint.

"That the said First National Bank had no notice or knowledge of any other or previous assignment of any of said indebtedness or contract price to any other person or corporation whatsoever and that it loaned the said sum of money to the said J. M. Fuller in reliance upon the said assignments and orders and that the said sums so loaned to the said J. M. Fuller were in fact used by the said J. M. Fuller in and about the construction of said building and in payment of labor and material bills that would otherwise have remained unpaid and would have formed the basis and the subject matter of unpaid claims and liens against the said building for which the complainant herein would have been liable under the terms of its bond."

It prayed: "This defendant asks that the complainant take nothing by reason of the

claim herein as against this defendant and that this defendant have judgment against the defendant, the Scott County Community High School and its Board of Trustees as the officials thereof in the sum of $10,000.00 free and clear of the claims of the complainant and its co-defendants herein."

The high school paid the $10,343.64 into the registry of the court and by its answer prayed that it be applied by the court to the payment of the unpaid bills of those who had furnished labor or material to Fuller in the construction of the building. The lower court upon the trial of the cause denied the prayer of the bank and ordered the $10,343.64 in the registry of the court applied, First: To the payment of the costs of the action. Second: To the payment of the claims of the parties to the suit who had furnised material for the construction of the building. Third: The balance applied toward the satisfaction of the judgment given by the court against Fuller in favor of the surety company on account of the payment of said sum of $13,029.24 by it in Fuller's behalf as above mentioned. The surety company acquiesced in this direct disposition of the fund, and, putting out of view the claim of the bank to the fund, it is too evident to require argument that no one else a party to the suit could complain of this disposition of it.

In a stipulation made at the trial of the cause "it was admitted that said surety has paid out the sum of $13,029.24 against the liability upon said bond" executed by the surety company in Fuller's behalf as contractor, and "it was agreed that there remains unpaid claims against the said defendant Fuller and complainant surety in the sum of $7,095.45 which in due course the complainant surety is bound to pay." It is beyond question, in view of these admissions, that the bank must recover this fund, if at all, upon the strength of its own right rather than upon any weakness in respect to the right of the surety company.

What then is its right?

■ The first proposition advanced in appellant's brief filed in this court in support of its right to the fund is that the order from Fuller dated January 22, 1931, above set out, constituted an inland bill of exchange, and that the rights and liabilities of the parties to it are to be determined by the laws of the state of Kansas. It is argued that upon acceptance by the high school the liability of the high school as acceptor became "positively fixed and limited by statute." As a conclusion from these premises it is urged that

"under this condition of fact and law appellant (Bank) respectfully insists that its right to recover against the drawee acceptor (High School) is not subject to equitable intervention." For the purposes of this case the bank's contention may be conceded without argument or discussion. What the bank's rights may be in a suit at law against the high school upon its accepted inland bill of exchange so called is not now before this court. The bank in its answer in this case did not set up by way of counterclaim or cross bill any such cause of action—and it should not be overlooked that such a cause of action by way of counterclaim or cross bill was not germane to the original suit and would not have been permissible under Equity Rule 30 (28 USCA § 723).

The allegations of the answer with respect to this order are quoted above. In these paragraphs of the answer the so-called inland bill of exchange, as well as the orders appearing on the several notes, are referred to as assignments, and as assignments are made the basis of the bank's claim to the fund in question.

■ Considered then as assignments, What were the rights of the bank under them in respect to the fund in question? Being assignments of a chose in action they were cognizable in equity and particularly so in that each assigned a part only of the fund in the hands of the high school. Since the assignment of January 22d is the most definite and the one chiefly relied upon in the brief, for convenience it only will be hereafter referred to.

■ The situation presented in the final analysis is this: The bank in the accepted order dated January 22d held an equitable assignment of so much of the fund in the hands of the high school as was needed to pay Fuller's indebtedness to it represented by his four notes. The surety company by reason of liability upon its bonds was entitled in equity to have the fund in the hands of the high school applied to the payment of the claims of those who had furnished labor or material in the construction of the building. When weighed in the balance in whose favor should the scales turn? This question has been answered definitely and authoritatively by the Supreme Court of the United States in the case of Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 144, 41 L. Ed. 412. In the Prairie State Bank Case as here the decision turned upon the weighing and balancing of conflicting equities, the one of a surety, the other of a bank which had made loans to a contractor holding, for the

962

purpose of argument, an equitable assignment. The court said: "That Hitchcock, as surety on the original contract, was entitled to assert the equitable doctrine of subrogation, is elementary."

After discussing the doctrine of subrogation the court continued: "Under the principles thus governing subrogation, it is clear that, while Hitchcock was entitled to subrogation, the bank was not. The former, in making his payments, discharged an obligation due by Sundberg for the performance of which he (Hitchcock) was bound under the obligation of his suretyship. The bank, on the contrary, was a mere volunteer, who lent money to Sundberg on the faith of a presumed agreement, and of supposed rights acquired thereunder."

And again, the court quoted with approval the following from Finney v. Condon, 86 Ill. 78, 81: "The law upon this subject seems to be, the reserved per cent. to be withheld until the completion of the work to be done is as much for the indemnity of him who may be a guarantor of the performance of the contract as for him for whom it is to be performed. And there is great justness in the rule adopted. Equitably, therefore, the sureties in such cases are entitled to have the sum agreed upon held as a fund out of which they may be indemnified. * * *"

The Prairie State Bank Case is controlling and we deem it unnecessary to prolong this discussion or make other citations.

■ In the discussion of the case so far it has been assumed that the order of January 22d constituted an unconditional equitable assignment of the fund in the hands of the high school for the sum of $10,000, the amount of Fuller's notes to the bank. This assumption, however, is not supported by the record. Article 5 of the building contract between Fuller and the high school provided:

"Article 5. Acceptance and Final Payment—Final payment shall be due 15 days after substantial completion of the work provided the work be then fully completed and the contract fully performed.

"Upon receipt of written notice that the work is ready for final inspection and acceptance, the Architect shall promptly make such inspection, and when he finds the work acceptable under the Contract and the Contract fully performed he shall promptly issue a final certificate, over his own signature, stating that the work provided for in this Contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the Contractor, and noted in said final certificate, is due and payable.

"Before issuance of final certificate the Contractor shall submit evidence satisfactory to the Architect that all payrolls, material bills, and other indebtedness connected with the work have been paid."

It will be observed from the above-quoted provision of the contract that final payment should not be made until after the issuance of a final certificate by the architect and that before the issuance of such final certificate "the contractor shall submit evidence satisfactory to the architect that all payrolls, material bills, and other indebtedness connected with the work have been paid." The order of January 22d given the bank by Fuller it will be observed provides that the $10,000 which is mentioned therein was "to be paid after the completion and acceptance of building from amount now retained." It is true that the high school took possession of the building some time in January, 1931, probably prior to the 22d, but there is nothing in the record which shows that such use and occupation constituted a waiver of article 5 of the contract. On the contrary it was stipulated at the trial: "5. It was agreed that the architect has never issued a final certificate of acceptance of the school building and that the school board has never formally accepted the same. That the only reason therefor is that all bills and claims have not been paid by the defendant Fuller; that otherwise the contract was substantially performed; and that the building has been completed in manner and form in accordance with the contract and specifications."

And one of the findings by the trial court was: "Fuller made default in the terms of his contract and bond, in that he failed to pay all bills for labor and/or material incurred in the erection of the said school building and, by reason of said default, the architect's final certificate of approval was never issued, and the Scott County Community High School never formally accepted said building."

The bank, at the time it received the order of January 22d, had opportunity to know and perhaps had actual notice of the terms of the contract as contained in article 5 above quoted and that Fuller was unable at that time to pay the bills for labor and material incurred in the erection of the school building. In view of the knowledge of the bank, actual or easily available, as to the default of Fuller, we think the order on its face shows that the $10,000 due the bank was accepted by the high school on condition that it would

be paid only after the acceptance of the building in the manner and on the conditions provided in the contract, that is to say, after "all payrolls, material bills, and other indebtedness connected with the work have been paid."

The decree of the trial court will in all respects be affirmed, and it is so ordered.