**REPUBLIC NAT. BANK & TRUST CO. et al.
v. MASSACHUSETTS BONDING &
INS. CO. et al.**

No. 7019.

Circuit Court of Appeals, Fifth Circuit.
Jan. 9, 1934.

446

S. W. Marshall, H. P. Kucera, and Hugh S. Grady, all of Dallas, Tex., for appellants.

F. T. Baldwin, of Houston, Tex., John Hancock, of Fort Worth, Tex., and J. M. Burford, L. E. Elliott, Fred J. Dudley, Ralph W. Malone, William Lipscomb, Tarlton Stafford, W. C. Gowan, Robert Allan Ritchie, F. H. Lowrance, D. A. Frank, Neth L. Leachman, Henry P. Edwards, Irving L. Goldberg, Hoyt A. Armstrong, F. W. Bartlett, Chas. D. Turner, and O. F. Wencker, all of Dallas, Tex., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

This appeal is from a decree in equity which dealt with the claims of furnishers of labor, materials, machinery, and supplies in the building of an airport for the city of Dallas, Tex., by a contractor under a bond on which Massachusetts Bonding & Insurance Company was surety. The parties are numerous and so are the errors assigned. The factual outline of the case is that the contractor, giving a bond under Tex. Rev. Stats. art. 5160, got Republic National Bank & Trust Company to finance him with loans made against an assignment of all moneys due and to become due on the job. The assignment was not presented to or accepted by the city until near the end of the work on February 5, 1932. On April 13th the final payment of about $29,000 was authorized by the city and the bank's representative went with the contractor to arrange collection of it. Three claimants for materials and machinery furnished had notified the city of their claims and asserted liens amounting to $5,674.21 against this payment under article 5472a, Vernon's Ann. Civ. St. Tex. The following day the bank and the contractor got from the city auditor a check for $23,349.77, the excess above these claims, which check the contractor indorsed and the bank applied to a note of about that amount which it held against the contractor. There were numerous other claims due on the job, and because he had nothing to pay with, being insolvent, the contractor on April 15th placed his affairs in receivership in the state courts. Many other claimants thereafter at different dates sought to give notice to the city under article 5472a, or to record their

claims against the contractor's bond under article 5160. On September 20, 1932, the surety, Massachusetts Bonding & Insurance Company, a corporation of Massachusetts, filed a bill setting up these facts, making parties defendant the contractor, the city, and the bank, who were citizens of Texas, and numerous claimants, many of them citizens of Texas, and all of a citizenship other than of Massachusetts. The complaining surety acknowledged liability on its bond and offered to pay all sums justly due, but contended for an application of the $5,674.21 still held by the city and of the $23,349.77 taken by the bank to the discharge of the claims against the bond in advance of payment of them by the surety. It asserted an equity in this fund as being reserved payments under the construction contract and under a statute passed in 1929 in amendment of article 5160 (Vernon's Ann. Civ. St. art. 5160) which required the city to retain the final payment until the contractor produced evidence that all just claims for labor and materials had been paid. The surety also claimed the money by virtue of an agreement to assign the final payment which was made by the contractor in his application for the bond. It prayed a decree that the city pay into court the money it held, and that the city and the bank restore what had been diverted to the bank, and, if not done, that judgment be had against them, and that the claims against the bond be established and paid out of the fund, and asked judgment against the contractor for all expenses and losses in the premises.

By motions to dismiss, the city and the bank challenged jurisdiction, both federal and equitable. There is on the face of the bill diversity of citizenship and a sufficient amount involved, but the contention is that the claimants, many of them citizens of Texas, are interested with the surety as against the city and the bank, and ought to be aligned accordingly, especially since by their answers they have joined in the prayer for a restoration of the $23,349.77. If thus aligned, there would be citizens of Texas on both sides of the controversy. But the rights of claimants under article 5160 are against the bond directly, while those of claimants under article 5472a are against the city and against the cash in its hands. The surety stands as a debtor to the first class of claimants, and as a beneficiary of the fund opposed to the second class of claimants. The basis of the surety's case is an equity of exoneration, an assertion that there are funds of its principal properly applicable to the

claims against the bond that ought in equity to be so applied before the surety is called on to pay. We examined and upheld this right of the surety on a construction bond under circumstances much like the present in Glades County v. Detroit Fidelity & Surety Co. (C. C. A.) 57 F.(2d) 449. The bill is thus based on the surety's own peculiar rights and seeks its protection as surety. If some of the defendants favor the relief prayed, it occasions no realignment of parties to the destruction of the surety's right to federal jurisdiction. Venner v. Great Northern Railway Co., 209 U. S. 24, 28 S. Ct. 328, 52 L. Ed. 666; Franz v. Franz (C. C. A.) 15 F.(2d) 797, 799. It is further urged that the agreement to assign the final payment made by the contractor to the surety in applying for the bond is one made by a citizen of Texas and does not entitle the assignee to sue in right of the assignee's citizenship. But the agreement to assign is not in law an assignment, and would require a bill to enforce it. It is no necessary part of the surety's right of action. His equity originates in the agreement of the city and contractor, reinforced by the act of 1929 to the same effect, that certain percentages of the earned payments shall be reserved for a final payment for the security of the city and surety, and equity treating this fund as a trust will see to its protection and application, recalling it if misapplied. This is the heart of the bill. Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Glades County v. Detroit Fidelity & Surety Co. (C. C. A.) 57 F.(2d) 449; First National Bank v. Fidelity & Deposit Co. (C. C. A.) 65 F.(2d) 959; Fidelity & Deposit Co. of Maryland v. Claiborne Parish School Board (D. C.) 11 F.(2d) 404. The motions to dismiss were properly overruled.

Attack was also made on the jurisdiction to entertain the so-called cross-bills against the city and the bank filed by claimants who were citizens of Texas, wherein they sought money judgments against the city and the bank for the amount of their claims. These judgments a federal court could not grant. By the main bill it acquired jurisdiction over the retained payment and the surety's liability on the bond as a fund for distribution, and could deal fully with those subjects. A dependent jurisdiction arose to settle disputes even between citizens of the same state and involving amounts less than $3,000 so far as necessary fully to administer that fund. But dependent jurisdiction exists only because and so far as it is neces-

448

sary to fully exercise the main jurisdiction. It cannot here be extended to render purely personal judgments in favor of one citizen of Texas against another for a supposed wrong done by the city in paying and by the bank in receiving money which ought to have been retained by the city. These judgments must be reversed and the cross-bills dismissed in so far as they seek such judgments.

The fund sought to be raised and administered is affected by the two statutes, article 5160 and article 5472a. The former is the statute requiring bond by contractors for public work to pay "all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract," and giving "any person * * * who has furnished labor or materials used in the construction" a right to go on the bond. The claimant must within ninety days from the date of delivery of materials and the performance of the work file with the county clerk for record a sworn, itemized claim as required by the mechanics' lien statutes. By Act of March 14, 1929 (chapter 226, § 1 [Vernon's Ann. Civ. St. art. 5160]) this article was amended by adding: "Provided further that after completion and acceptance of completed project all moneys due contractor under said contract shall be held by the State or its counties or school districts or other subdivision thereof or any municipality until such a time that satisfactory evidence is submitted and affidavits made by the contractor that all just bills for labor and material under this contract has [have] been paid in full by the contractor." Articles 5472a, 5472b, Vernon's Ann. Civ. St. Tex., are wholly separate legislation passed in 1925, and provide that any person "furnishing any material, *apparatus, fixtures, machinery* or labor to any contractor for any public improvements in this State, shall *have a lien on the moneys,* or bonds, or warrants, *due or to become due* to such contractors for such improvements; *provided,* such person * * * shall, before any payment is made to such contractor, *notify in writing* the officials of the State, county, town or municipalities whose duty it is to pay such contractor of his claim. That no public official, when so notified in writing, shall pay all of said moneys, bonds or warrants due said contractor, but shall *retain enough of said moneys, bonds or warrants to pay said claim,* in case it is established by judgment in a court of proper jurisdiction." (Italics supplied.) Claims amounting to $5,674.21 were notified to the city officials before the pay-

ment to the bank on April 14, 1932, and money was retained to cover them. These claimants acquired a lien on that money thus kept in the city's hands. Many other claimants since April 14th have notified the city officials of their claims and assert that they likewise have a lien on the detained money and also on that paid to the bank because it was paid in violation of the 1929 amendment to article 5160 requiring final payment to be held until the contractor makes affidavit of the payment of all claims. The city officials overlooked this amendment and did not require the affidavit and say they did not know of any outstanding claims except those to meet which money was retained. We do not think a claimant under one statute can use the other to help him. While both statutes relate to public contracts and both seek to secure payment for labor and materials, they have a quite different scope and operation. Article 5160 protects furnishers of labor and material only, while article 5472a includes also furnishers of apparatus, fixtures, and machinery. The former gives no lien on anything, but establishes a personal right to go against the bond by making a record in the clerk's office of the claim, while the latter takes no notice of the bond but gives a lien on any payment due in money, bonds, or warrants, whether it be the first or final or any other payment; provided notice is given the city before payment is made. The notice is made to serve as a kind of statutory garnishment, but only a sufficient sum is detained to satisfy the notifying creditor. The act of 1929 did not amend the lien statute, article 5472a, but amended the bond statute, article 5160, and dealt only with the final payment, requiring it to be withheld not in part to cover any particular claim, but entire until a required affidavit is made. It does not say that any one is to acquire any lien, nor does it provide any procedure to fix one. But it enters into the bond and operates to further secure the city and the surety in a proper application of the reserved payment. If the payment is in fact retained, a claimant notifying the city under article 5472a can obtain a lien on it although he has not recorded his claim against the bond under article 5160, but if he fails to give notice before payment is made, he has no lien and no right at law or in equity to recall the payment in order to fix one. That no lien can be acquired under article 5472a by a notice given after actual payment we think is intended to be ruled in Dunham Co. v. McKee (Tex. Civ. App.) 57 S.W.(2d) 1132.

As regards the $5,674.21 which was retained by the city, it would seem to be wrong as against the diligent claimants who had the money retained to allow subsequent notices to fix an equal lien on it. Where, as in this case, money is retained definitely for the payment of notifying claimants and other money is released, we do not think that subsequent notices should impair the lien acquired by the diligent claimant on the money retained specially for his claim. In such a case liens acquired by notices should rank according to the date of the notice. It appears that the percentages reserved under the contract amount only to $16,000. The $5,674.21 could therefore have been paid over to the contractor without impairing the surety's equity to have the reserved percentages stand as security for a final settlement. The detainer of the $5,674.21 under the notices might in these circumstances be considered as a payment made to the contractor, and no conflict arises between the equity of the surety and the application of this money to the liens against it under article 5472a.

 Claimants who duly recorded their claims in the clerk's office within ninety days according to article 5160 are entitled to go against the bond and the surety is entitled to exoneration against them; and to recall from the bank so much of the money paid to it as is necessary to that end. Without stating the evidence we agree with the finding made below that the bank in taking the check on April 14th was on notice that there were outstanding claims against the bond. Its assignment taken from the contractor at the beginning of the work refers to the contract which provided for the reserved percentages as a security. It was aware also that the contractor was in failing circumstances. Its rights under its assignment and as the recipient of the check on an antecedent debt are subordinate to the equities of the surety to have this security properly applied. Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412. And see Hess & Skinner Engineering Co. v. Turney, 110 Tex. 149, 216 S. W. 621. The bank may be called on to restore the diverted money so far as need be. The city also, should the bank not respond, is liable to the surety for the misapplication of the trust fund. Not only did the contract to secure which the bond was made provide for retention of a percentage of all the payments, but the statute as amended also required such retention until affidavit should be made showing payment of all just claims

against the bond. The statute was a part of the contract and could not be disregarded to the surety's injury. United States F. & G. Co. v. City of Canton, 157 Miss. 680, 128 So. 744; United States F. & G. Co. v. Monte Sano, 160 Wash. 565, 295 P. 934; State v. Webb, 112 W. Va. 622, 166 S. E. 281. The bond contains a clause reading: "No change in the terms or provisions of the specifications or the manner of making payment shall to any extent affect the obligation of the principal or sureties on this bond." We do not think this amounts to a permission to do away with the retained percentages mentioned in the contract. The clause meant to cut off a defense that the bond was discharged by reason of any change in the specifications, or failures or deviations respecting the payments, during the execution of the work. The reserved percentages are rather a security for final settlement than a payment, but if they are also included under the clause the misapplication of them is not authorized or condoned but the principal and surety merely agree that the bond shall nevertheless stand good. The clause does not say that the misapplied fund may not be recovered. Fort Worth Ind. School Dist. v. Ætna Casualty & Power Co. (C. C. A.) 48 F.(2d) 1.

 It next becomes necessary to inquire what claims are good against the bond. The claim must be filed with the county clerk as required by article 5160. Notice to the city under article 5472a will not suffice. First National Bank v. Lyon-Gray Lumber Co., 110 Tex. 162, 217 S. W. 133. As to time, the filing must be within ninety days from the date of the delivery of material or the performance of the work. Where, however, material or work is furnished or done under a single contract or understanding therefor, the ninety day limitation begins to run only from the last item. It cannot be said that the material has been fully delivered or the work completely performed under the contract therefor until the last of it is accomplished. This is the construction given to similar language in other statutes. Matthews v. Wagenhaeuser Brewing Association, 83 Tex. 604, 19 S. W. 150; Kizer Lumber Co. v. Mosely, 56 Ark. 544, 20 S. W. 409; Hercules Powder Co. v. Knoxville, L. & J. R. Co., 113 Tenn. 382, 83 S. W. 354, 67 L. R. A. 487, 106 Am. St. Rep. 836; American Tank Co. v. Continental & Commercial Trust & Savings Bank (C. C. A.) 3 F.(2d) 122. Touching itemization the standard fixed is that required by the statutes as to mechanics' liens. As to these the Supreme Court of

Texas has laid down the general rule that reasonable certainty as to the character and amount of materials furnished and the work performed, the dates when and places where thus furnished and performed, and the value of the same is requisite. Meyers v. Wood, 95 Tex. 67, 65 S. W. 174. So tested, the claims of The Texas Co., Mosher Steel & Mfg. Co., Peaslee-Gaulbert Corporation and B. W. Slaughter appear to be sufficient. Procter & Gamble Company's claim does not seem to show what was furnished. We do not find any evidence that Texas Pacific Coal & Oil Company ever filed their claim with the county clerk. We esteem it best to allow a reconsideration of these claims that their status may be truly ascertained. One part of the claim of the Texas company is for demurrage on delayed tank cars. Freight is lienable as a part of the price of materials furnished. Demurrage was apparently included in City of Stuart v. American Surety Co. (C. C. A.) 38 F.(2d) 193. Where a car is detained only a few days to save the expense of a double handling of the shipment, the surety on the bond is not hurt for he would be bound for the labor thus saved. Where, however, the cars are used as a storage place for the material, a different question arises. Some of the detentions charged for are for two and three weeks. It ought to be made to appear that such are not merely storage place rentals for which the surety could not have been bound. It is proven as to this claim and several others that about 3 per cent. of the material ordered for and delivered to the airport job was in fact used by the contractor in doing several other small jobs. It does not appear whether the money collected from the other jobs for this material was used to relieve charges against the airport job or not. Presumptively material ordered for and delivered to the airport job comes within article 5160, the burden being upon any party so asserting to show that some of it though furnished for the job was not used in it. If, however, that burden be carried, we hold the value of the diverted material cannot be asserted against the airport job. We are not dealing with a lien upon the work, but with the liability on a bond. The language of the bond and of the statute under which it was given are controlling.

The statute requires a bond conditioned to pay all persons supplying the contractor with labor and materials in the prosecution of the work and the bond reads to pay for materials furnished and labor done. It has been held that materials are supplied when delivered for the work at an appropriate place and that a diversion by the owner or contractor will not defeat the materialman. Giant Portland Cement Co. v. State, 232 N. Y. 395, 134 N. E. 322. But the Texas statute in giving the right to go upon the bond limits it to those "who have furnished labor or materials *used in the construction.*" Material delivered but diverted from the job by the contractor is not used in the construction. The materialman must look to the contractor and to the job in which it was actually used for the diverted material. Kidd v. City of Jacksonville, Florida, 97 Fla. 297, 120 So. 556. And this is just as respects the surety, for he is bound to complete the work and replace the diverted material and is bound for the price of the replacement. Should it be shown that the diverted material was paid for to the contractor and he paid the furnisher, the payment may be so applied and the balance stand as a charge against the bond. In such a case the surety is not concerned in the diversion.

We shall not attempt to rule on each claim, but will leave the application of what we have decided to the court below with the assistance of counsel there. To sum up, no one except the surety is entitled in this proceeding to any money judgment against the city of Dallas or the bank. Those claimants who gave the city notice before April 14, 1932, are entitled to be paid from the money retained by the city for their claims. Those claimants who properly perfected their claims under article 5160 may have judgment against the surety on the bond and the surety should have judgment over against the bank for its exoneration and also against the city if the bank should fail to respond. Things not lienable, as unjustified demurrage charges and materials proven to have been diverted from the job, are to be purged from the claims. The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.