**COMMERCIAL STANDARD INSUR-
ANCE COMPANY, Plaintiff,**

**v.**

**Ellis CAMPBELL, Jr., District Director
of Internal Revenue; S. W. Taylor,
Collection Officer, and First National
Bank, Arlington, Texas, Defendants.**

**Civ. No. 3053.**

United States District Court
N. D. Texas, Fort Worth Division.

Dec. 7, 1956.

Malone, Lipscomb & Seay, Dallas, Tex., for plaintiff.

Heard L. Floore, U. S. Dist. Atty., and John A. Lowther, Asst. Dist. Atty., Fort Worth, Tex., for the Government.

Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Tex., for First National Bank of Arlington.

ESTES, District Judge.

Pursuant to the National Defense Facilities Act of 1950, Public Law No. 783, 81st Congress, Tit. 50 U.S.C.A. §§ 881–887, and the Department of Defense Appropriation Act, 1952, Public Law No. 179, 82nd Congress, 65 Stat. 423, the United States of America and the State of Texas entered into a written agreement whereby certain armory units were to be constructed at various points in the State of Texas, the United States of America paying 75% of the costs and the State of Texas 25%.

On February 10, 1954, the State of Texas entered into a written contract with one Cleo Webb Key, doing business as C. W. Key and Son, for the construction of an armory at Denton, Texas, that contract being described by No. DA–41–292–NG–167 for a total consideration of $58,600.

On February 10, 1954, C. W. Key, doing business as C. W. Key and Son, as principal, and Commercial Standard Insurance Company, plaintiff herein, as surety, executed a performance bond and a bills payment bond, each in the sum of $58,600, payable to the State of Texas, as obligee, to secure the performance and payment of bills on the armory construction contract. As a part of the application for said bond, the principal, as "collateral to secure the obligations herein and any other indebtedness and liabilities of the undersigned to the company, whether heretofore or hereafter incurred, such assignment to become effective as of the date of said contract bond but only in event of" (certain specified defaults on the part of the contractor), assigned to plaintiff "any and all percentages retained on account of said contract, and any and all sums that may be due under said contract at the time of such abandonment, forfeiture, or breach, or that thereafter may become due." Between the dates of February 10, 1954, and September 21, 1954, the State of Texas entered into eight other contracts for the building of additional armories at various locations in the State of Texas. It is stipulated by the parties that each of the contracts, bonds, and applications for bonds are identical save as to amount.

Some of the contracts were between the State of Texas and C. W. Key, G. E. LaRue, and V. L. Clynch, but the parties have agreed that all will be treated the same since these parties constructed and completed said units under a joint venture.

The State of Texas in its contract with the builders agreed to advance money on monthly estimates less the required retained percentage of 10%, which was to be paid to contractors upon completion of each project, provided all bills for labor and material had been paid. None of the money involved in this action constitutes any part of the retained percentages.

The contractors entered upon the performance of their contract, attempting to finance the costs through local banks, and the proceeds of the contracts were assigned to said banks. The contractor executed notes to the various banks for monies advanced and when payment was received from the State or the Federal government these monies were deposited in the contractor's account less the amount of indebtedness owed by the contractor to the bank.

This procedure was used until in November 1954 when Acme Brick Company filed notice of an unpaid account for some $35,000 for material furnished. At that time the contractors were unable to fur-

ther finance the projects and this information was given to their surety.

It was agreed between the contractors and their surety that a bank account would be opened in the First National Bank of Arlington, Texas, defendant herein, known as the C. W. Key and Son Construction account. The deposit in this account was made up of proceeds from the contract, monies advanced by the surety to the contractors for which contractors executed their notes to surety, and money borrowed from the First National Bank of Arlington. On the notes for these sums contractors and surety appear either as co-makers or as maker and guarantor, the surety being the guarantor.

It was further agreed by the parties that one Koeneman, an employee of surety and one Ford, an independent accountant who kept contractor's books, would be authorized to sign checks on this account. The contractors had no checking privileges. This account later was changed to the armory construction account, and at the time of the government's levy contained sufficient monies to pay the tax account. All payrolls and material bills were paid out of this account.

At all times, both before and after November 19, 1954, there was deducted from the account paid each laborer, the withholding tax and employee's portion of social security. These withheld taxes were not, however, paid to the government and the Collector of Internal Revenue at Dallas assessed withholding and social security taxes against the contractors, and gave notice to, and served levy upon, the defendant bank. Prior to the assessment and levy the surety had advanced more money to the contractor than there was in the bank account.

Plaintiff filed this suit to enjoin the District Director and S. W. Taylor from enforcing the levy, and the bank from honoring the levy. A temporary restraining order against these parties was issued and remained in force at the time of this trial. Subsequently, the United States of America was made party defendant and at the time this case went to trial, Ellis Campbell, Jr., District Director of Internal Revenue, S. W. Taylor, Collection Officer, the First National Bank of Arlington, Texas, and the United States of America were defendants.

It is the contention of plaintiff:

(a) The funds on deposit in the First National Bank, Arlington, Texas, in the Armories Construction Account is the property of plaintiff.

(b) That in the event the account is held to be the property of taxpayers the assignment which surety holds as a part of the application for performance and bills payment bonds is prior to the lien of the government for withholding, social security, and unemployment taxes, and

(c) The claims of Commercial Standard Insurance Company are prior to the government's claim for taxes by virtue of the equitable doctrine of subrogation.

The government claims that the bank account in question is owned by taxpayers; that the government's claim for withholding, social security, and unemployment taxes is superior to the assignment or any lien held by the surety company; that the monies in the account are not covered by the assignment between the taxpayers and surety company; and that Commercial Standard Insurance Company is liable for the withholding, social security, and unemployment taxes as an employer within the meaning of the Internal Revenue Code, Chapter 24, 26 U.S.C.A. (I.R.C.1954) § 3401 et seq.

Defendant First National Bank of Arlington, Texas, claims that it is merely a stakeholder and is entitled to attorney's fees in the sum of $500. This amount is stipulated by the parties to be reasonable, if due.

At the pre-trial conference it was determined that the contested issues of law are:

1. Whether the Armories Construction Account was the property of the taxpayer or the surety.

2. Determination of priority as between Commercial Standard Insurance Company's assignment and the government liens.

3. Whether Commercial Standard Insurance Company is an employer within the meaning of the Internal Revenue Code of 1954, Section 3401(d) (1).

3. Whether the First National Bank of Arlington, Texas, defendant, is entitled to allowance of reasonable attorneys' fees.

■ The Court is of the opinion that the bank account in question is the property of contractor as taxpayer; hence the Government's lien for unpaid taxes attached to it. Investment & Securities Co. v. United States, 9 Cir., 140 F.2d 894, which was cited in Glass City Bank v. United States, 326 U.S. 265, 269, 66 S.Ct. 108, 90 L.Ed. 56; Citizens State Bank of Barstow, Texas v. Vidal, 10 Cir., 114 F.2d 380.

■ This leads to the consideration of the priority of the Government tax lien and the assignment to surety. That assignment having been made to become effective on the date of the application for bond, on the happening of a future contingency, created merely a lien and did not establish the surety as a purchaser within the meaning of the Internal Revenue Code. Street v. Pacific Indemnity Co., 9 Cir., 61 F.2d 106; and since it governed funds to become due in the future is equitable. Hess and Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S.W. 621. As such, the assignment was inchoate and unperfected (at the time the Government's lien arose) under the text laid down in the following decisions: United States v. Waddill, 1945, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294; United States v. Security Trust & Savings Bank, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States v. Acri, 1955, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Liverpool & Globe Insurance Company, 1955, 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268; United States v. Colotta, 1955, 350 U.S. 808, 76 S.Ct. 82, reversing, Miss., 79 So.2d 474; United States v. White Bear Brewing Company, 1956, 350 U.S. 1010, 76 S.Ct. 646, reversing, 7 Cir., 227 F.2d 359.

Since only a choate and perfected lien can be given priority over a lien for unpaid federal taxes, it must necessarily be concluded that the question of priority should be resolved in favor of the Government.

■ Nor am I convinced that the surety's lien ever attached to the bank account. This lien attached merely to the proceeds of the contract and in no manner attached to borrowed money nor to a bank account. Funds were so intermingled in the accounts that it is impossible to say that the funds in the bank at the time the tax lien arose were proceeds of the contract.

■ The surety cannot prevail from the doctrine of subrogation. To do so, a surety is required to show that some laborer or materialman whose claim it has paid, had a lien superior to the Government's tax lien. This being a public works contract, such laborer or materialman must have perfected a lien under Articles 5160 or 7345(a) of the Vernon's Annotated Civil Statutes of Texas. Surety, in its brief, states that a lien was filed under Article 5160. However, this Statute does not create a lien on the proceeds on the contract but merely gives the claimant the right to proceed against the surety. Republic National Bank & Trust Co. v. Massachusetts Bonding & Ins. Co., 5 Cir., 1934, 68 F.2d 445.

This case is distinguishable from such case as Glenn v. American Surety Company, 6 Cir., 160 F.2d 977, cited by plaintiff in its brief. The Glenn case involved retained percentages to which the contractor had no right until all laborers and materialman claims have been paid.

Having determined that the bank account in question is the property of the contractor, it is unnecessary to decide the Government's contention that plaintiff surety is an employer within the meaning of the Internal Revenue Code of 1954, Section 3401(d) (1), Chapter 24. However, if surety's contention that this

account is not contractor's (taxpayer) property be correct, then surety's contention that it was not an employer under the Internal Revenue Code is untenable, because surety could only become entitled to the contract proceeds and proceeds of contractor's notes in such account (certainly the portion withheld from contractor's employees wages) in the right, stead and legal position of contractor who was an employer.

■ The defendant, First National Bank of Arlington, Texas, is a mere stakeholder and is entitled to be paid its attorney's fee in the sum of $500 out of the funds in this account. United States v. Ullman, D.C., 115 F.Supp. 211; Mutual Life Ins. Co. of New York v. Bondurant, 6 Cir., 27 F.2d 464; Bondurant v. Mutual Life Ins. Co., 278 U.S. 630, 49 S. Ct. 30, 73 L.Ed. 548; McNamara v. Provident Sav. Life Assur. Soc. of New York, 5 Cir., 114 F. 910.

Counsel for the Government will submit a decree in accordance with this opinion, after having same approved as to form by counsel for the other parties.